**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Elton Orville MEYER and Walter McMahon, Defendants-Appellees.**

**No. 80–5649.**

United States Court of Appeals,
Fifth Circuit.
Unit B

Sept. 21, 1981.

Stephen B. Gillman, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellant.

Stephen Rosen, Paul Morris, Miami, Fla., for Meyer.

Angus M. Stephens, Coral Gables, Fla., for McMahon.

Before RONEY, VANCE and RANDALL, Circuit Judges.

RONEY, Circuit Judge:

Federal drug enforcement agents, searching a Miami apartment, seized cocaine hidden in a bathroom cabinet. Defendants, who were in the apartment at the time as guests of the tenant, were indicted for violating federal narcotics laws in connection with the cocaine. The issue on appeal is whether defendants had a legitimate expectation of privacy in the area where the cocaine was seized, entitling them to challenge the legality of the search and seizure. We hold they did not have this expectation, and reverse the district court order which granted their motions to suppress.

The material facts, developed through testimony at a suppression hearing, are as follows. Agent James Marshall of the Drug Enforcement Administration (DEA) commenced an undercover operation in April 1980. Marshall allegedly arranged a cocaine transaction with Orville Meyer and Joe Abbott.

On the evening of April 23, Marshall and Meyer went to an apartment rented by Steven Hodlow, who lived there with his wife and child. Hodlow was not home at the time, but his wife invited the pair in and then immediately left with the child. Hodlow arrived about thirty minutes later with Walter McMahon. The four remained in the apartment for approximately fifteen minutes, allegedly to complete the drug transaction. Agent Marshall and Hodlow then departed, leaving Meyer and McMahon alone briefly in the apartment.

Surveilling DEA agents, acting upon Marshall's statement there was cocaine inside, sought entry into the apartment by knocking and announcing their presence. When there was no response, they forced the locked door open. The agents found Meyer lying spread-eagled on the living room floor and McMahon barricaded behind an upturned bed in one of the bedrooms.

In response to questioning by one of the agents, McMahon indicated the cocaine was in one of the bathrooms. Finding nothing, the agent conducting the search again asked McMahon, who responded the drugs were in the cabinet under the sink. The agent opened the cabinet and removed a cardboard box containing approximately one kilogram (2.2 pounds) of cocaine.

Meyer and McMahon were indicted along with Hodlow and Abbott for possession and distribution of cocaine, as well as for conspiracy to possess with intent to distribute. 21 U.S.C.A. §§ 841(a)(1); 846. Hodlow and Abbott are not parties to this appeal.

Meyer and McMahon filed motions to suppress. The district court, adopting the magistrate's report, held they had "standing" to challenge the seizure of the cocaine, apparently because both were involved in the drug conspiracy and were present in the apartment with the tenant's permission. Approving the magistrate's finding of an illegal warrantless search of the bathroom cabinet, the court granted the motions. The Government appeals the suppression order.

The Government challenges only the district court's holding that Meyer and McMahon had standing to contest the search, and does not dispute the finding of an unlawful search. Accordingly, we assume for purposes of this decision that the search of the bathroom cabinet and seizure of the cocaine were illegal.

■ To invoke the exclusionary rule, a defendant must establish that his own Fourth Amendment rights were violated by an unlawful search and seizure. Attempts to vicariously assert violations of the Fourth Amendment rights of others have been repeatedly rejected. *See, e. g., United States v. Salvucci*, 448 U.S. 83, 86, 100 S.Ct. 2547, 2550, 65 L.Ed.2d 619 (1980); *Rakas v. Illinois*, 439 U.S. 128, 134, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978); *Alderman v. United States*, 394 U.S. 165, 174, 89 S.Ct. 961, 966,

22 L.Ed.2d 176 (1969). *See also United States v. Vicknair,* 610 F.2d 372, 377 (5th Cir. 1980), *cert. denied,* 449 U.S. 823, 101 S.Ct. 83, 66 L.Ed.2d 25 (1981); *United States v. Byers,* 600 F.2d 1130, 1132 (5th Cir. 1979).

Whether a defendant's Fourth Amendment rights have been violated by an unlawful search turns on his "legitimate expectation of privacy" in the area searched. *Rakas v. Illinois,* 439 U.S. at 143, 99 S.Ct. at 430. While an ownership or possessory interest is not necessarily required, the mere legitimate presence on the searched premises by invitation or otherwise, is insufficient in itself to create a protectable expectation. *Id.* at 142–43, 99 S.Ct. at 429–30. *See also Vicknair, supra,* 610 F.2d at 379.

A defendant must also establish a legitimate expectation of privacy in the *particular area* searched in order for a Fourth Amendment challenge to be allowed. With respect to the automobile search challenged in *Rakas,* the Court stated:

> [T]he fact that [defendants] were 'legitimately on the premises' in the sense that they were in the car with the permission of its owner is not determinative of *whether they had a legitimate expectation of privacy in the particular areas of the automobile searched.* [Defendants] made no showing that they had any expectation of privacy in the glove compartment or area under the seat of the car in which they were merely passengers. Like the trunk of an automobile, these are areas in which a passenger *qua* passenger simply would not normally have a legitimate expectation of privacy.

439 U.S. at 148–49, 99 S.Ct. at 433 (emphasis supplied). In illustrative dictum, the Court extended this analysis to dwellings, noting a "casual visitor who has never seen, or been permitted to visit, the basement of another's house [may not] object to a search of the basement if the visitor happened to be in the kitchen of the house at the time of the search." *Id.* at 142, 99 S.Ct. at 430.

We need not decide whether defendants in this case had a legitimate expectation of privacy in the living room and bedrooms, although it appears doubtful their presence in the apartment for less than an hour created such an expectation. *Compare United States v. Robertson,* 606 F.2d 853, 858 n.2 (9th Cir. 1979) (defendant may challenge the search of a house belonging to another, where he has spent at least one night there and has stored personal belongings in the room searched), *with United States v. Reyes,* 595 F.2d 275, 278–79 (5th Cir. 1979) (defendants who were mere passengers in a private aircraft had an insufficient expectation of privacy to object to its search). It is sufficient to conclude that defendants had no such expectation in the bathroom cabinet.

Like the areas of the automobile discussed in *Rakas,* bathroom cabinets are not areas of a dwelling in which visitors normally have any expectation of privacy. Defendants do not allege they either placed the cocaine in the cabinet or even entered the bathroom in which it was discovered. Meyer testified that he had only entered the living room and master bedroom, and that McMahon had in addition entered only the second bedroom. McMahon did not testify. Under these circumstances, defendants have shown no basis for asserting any reasonable expectation of privacy in a cabinet in a room they do not allege to have entered.

This case is distinguishable from *United States v. Haydel,* 649 F.2d 1152 (5th Cir. 1981), in which this Court held the defendant had a legitimate expectation of privacy in gambling records secreted in his parents' home under their bed. The Court relied on the following factors in reaching its conclusion: (1) defendant's parents had given him permission to use their home and had also given him a key, thus giving him "unencumbered access;" (2) he kept clothing there and occasionally remained overnight; (3) he conducted his gambling activities at the home and owned the records seized; and (4) he exhibited a subjective expectation that the contents of the box in which the records were kept were to remain private. 649 F.2d at 1154.

None of these factors is present here. Defendants have not alleged they either had a key to Hodlow's apartment or otherwise had "unencumbered access." They also have not indicated they ever remained in the apartment overnight or kept any personal belongings there. They were not related to the Hodlows. Finally, while defendants claim they obviously intended their alleged drug transaction to remain private, the Supreme Court expressly held in *Rakas* that the "subjective expectation of not being discovered" conducting criminal activities is insufficient to create a legitimate expectation of privacy. 439 U.S. at 143–44 n.12, 99 S.Ct. at 430–31 n.12. *See also Vicknair*, 610 F.2d at 379 ("The fact that defendants were associated together in an illegal enterprise does not alter the focus of our inquiry [as to their reasonable expectation of privacy]").

We hold defendants failed to bear their burden of proof of establishing a legitimate expectation of privacy in the area where the cocaine was seized. *See Rakas v. Illinois*, 439 U.S. at 130–31 n.1, 99 S.Ct. at 423–24 n.1. Accordingly, the order granting the motions to suppress is reversed.

REVERSED.