**UNITED STATES of America, Plaintiff,**

v.

**Sarkis G. SOGHANALIAN and Pan Aviation, Inc., Defendants.**

**No. 87–893–CR.**

United States District Court,
S.D. Florida,
Miami Division.

Jan. 21, 1992.

Susan Tarbe, Coral Gables, Fla., for plaintiff.

Neal R. Sonnett, Gerald F. Richman, Miami, Fla., for defendants.

## MEMORANDUM OPINION DENYING MOTION FOR NEW TRIAL

MORENO, District Judge.

THIS CAUSE came before the Court upon Defendants' Motion For New Trial Based on Newly Discovered Evidence.

THE COURT has considered the Motion, responses and the pertinent portions of the

record, and being otherwise fully advised in the premises, it is

ADJUDGED that Defendants' Motion for a New Trial is DENIED without an evidentiary hearing. Defendants seek a new trial based on the contention that newly discovered evidence has recently been obtained by counsel for Defendants. Counsel claims that this new evidence is both material to the case and would have produced the Defendants' acquittal if the evidence had been presented to the jury. The newly discovered evidence claimed by Defendants is produced via the affidavit of William Ellis, the affidavit of Gerald F. Richman, Esq., attorney for Defendant Pan Aviation, Inc., and two "Post-it Notes" handwritten by Jack Real, as well as a typewritten letter, all of which are attached as exhibits to Defendants' Motion.

Defendants move for a new trial based on a telephone conversation between Jack Real, former president of Hughes Helicopter and William Ellis, a co-conspirator charged in a separate indictment who shares legal representation with Defendant Soghanalian, regarding a meeting in 1982 at which Ellis was present but failed to remember until reminded by Real's description of the meeting.

The main topic of the conversation concerned information which Real provided Ellis in response to Ellis' statement regarding the "government's major arguments during the trial that there had never been any interest by Kuwait in purchasing 500 MD/TOW helicopters." The evidence which defense counsel considers of crucial importance and warranting a new trial is Real's statement that, at the Farnborough air show in 1982, he had been approached by a Kuwaiti government official and a woman expressing interest in Hughes military helicopters.

## THE LAW ON NEWLY DISCOVERED EVIDENCE

■ A motion for a new trial is addressed to the sound discretion of the trial court, and a decision to deny a motion for a new trial will not be reversed absent an abuse of discretion. *United States v. Champion*, 813 F.2d 1154 (11th Cir.1987). A motion for a new trial must be viewed with "great caution." *United States v. Hall*, 854 F.2d 1269, 1271 (11th Cir.1988) (quoting *Bentley v. United States*, 701 F.2d 897, 898 (11th Cir.1983)).

■ The Eleventh Circuit has consistently required that five elements be satisfied to justify a new trial on the basis of newly discovered evidence: (1) the evidence must be discovered following trial; (2) the movant must show due diligence to discover the evidence; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence must be material to issues before the Court; and (5) the evidence must be of such a nature that a new trial would probably produce a new result. *See United States v. Reed*, 887 F.2d 1398 (11th Cir. 1989); *United States v. DiBernardo*, 880 F.2d 1216 (11th Cir.1989); *United States v. Burton*, 871 F.2d 1566 (11th Cir.1989); *United States v. Champion*, 813 F.2d 1154 (11th Cir.1987). As a matter of law, the trial court cannot grant a motion for a new trial based on newly discovered evidence once it has determined that the movant has failed to satisfy any part of the five-part test. *See United States v. Reed*, 887 F.2d 1398 (11th Cir.1989); *United States v. Hall*, 854 F.2d 1269 (11th Cir.1988).

## ANALYSIS

### 1. Defendant's Fail to Show that the Evidence was Discovered After Trial

■ Defendants claim that corporate counsel's refusal to allow Defendants to interview Jack Real prevented them from learning the information that Real had been approached at the air show in 1982 by an unidentified Kuwaiti official and woman making inquiry about Hughes military helicopters. Discovery of this critical information alleges no link to Defendant Sarkis Soghanalian nor negotiations with the Kuwait government. Nothing more than mere interest at the air show in 1982 is being alleged.

This critical information has been in the possession of the co-conspirator Ellis, who

has shared legal representation with Soghanalian since 1982.[1] Defendants cannot now complain that such information is newly discovered. At best co-conspirator Ellis' alleged memory loss of his knowledge of the critical information became newly available due to Ellis' regain of memory. Newly available information does not satisfy the newly discovered criteria. *See United States v. Sjeklocha*, 843 F.2d 485, 487 (11th Cir.1988); *United States v. Metz*, 652 F.2d 478 (5th Cir.1981).

Defense counsel further contends that they were "unable to interview Jack Real." There is simply no merit in this claim. If Defendants desired to interview Real, they could have easily done so by service of a defense subpoena on Real's counsel. Defendants simply made a strategic decision not to call Real as a witness. Real was as available to Defendants as he was to the government.

### 2. Defendants Cannot Show Due Diligence to Discover the Evidence

Defendants, through counsel for Defendant Pan Aviation, interviewed Jack Real at the Paris Air Show in 1987 (See Affidavit of Gerald F. Richman p. 4) and discussed the instant case with respect to Real's Grand Jury testimony. Defendants' failure to conduct a thorough interview of Jack Real cannot now be the basis of newly discovered evidence. Accordingly, Defendants clearly have failed to show their exercise of due diligence in discovering the evidence that in 1982 a Kuwaiti official and woman approached Real and expressed an interest in Hughes military helicopters. *See United States v. Williams*, 816 F.2d 1527 (11th Cir.1987).

### 3. The Proffered Evidence Must Not Be Merely Cumulative or Impeaching

The evidence that Real was approached by a Kuwaiti official and woman at the air show in 1982 expressing an interest in Hughes military helicopters was at best cumulative. This Court allowed Defendants' exhaustive efforts to show Kuwait's access to other military hardware during the early 1980's and through the time of the indictment.

The evidence as to Real's troubles with co-defendant Perry prior to the events in the indictment would at best be impeaching as to Taylor assuming Taylor had knowledge of such. Defendants exhaustively cross-examined Taylor in an effort to show Taylor's bias against Perry. In fact, Defendants elicited testimony from Taylor regarding Lummus, the executor of the Hughes estate. Defendants could have easily subpoenaed Lummus or Real to inquire as to Perry's dismissal in the state of mind of Lummus and or Real. The 11th Circuit has consistently rejected such cumulative and impeaching evidence as a basis for a new trial. *See United States v. Garcia*, 854 F.2d 1280 (11th Cir.1988).

### 4. Defendants Cannot Show that the Evidence Is Material to Issues Before the Court

Newly discovered evidence must be material and the question of materiality rests in the discretion of the trial court. *United States v. Hirst*, 668 F.2d 1180, 1185 (11th Cir.1982). Absent from Defendants' claim of newly discovered evidence is how the incident at the air show shows a link or nexus to the Defendant Sarkis Soghanalian. The evidence at trial showed that in January of 1983, the Defendants and Brigadier Mohammed began to discuss Iraq's obtaining of Hughes helicopters by way of Kuwait. The testimony of Ungerrecht, Taylor, Whelan and Hughes Aircraft employees and the memos of Perry and Ellis illustrated the conspiracy.

An approach by an unidentified Kuwaiti official and woman at an international air show does not meet the materiality standard with respect to the Defendants' intent to commit the charged crimes. In fact, Defendants' effectively elicited on cross-examination at trial the accessibility to any-

---

**1.** Counsel for Defendant Sarkis Soghanalian, Neal R. Sonnet, Esq., also represents co-conspirator Ellis, and has done so since that separate indictment. Hearings were held by this Court regarding possible conflicts of interest due to representation of Soghanalian and Ellis by the same counsel. Counsel and all parties represented to the Court that there has never been any conflict of interest in the dual representation.

one of the information and demonstrations available at such air shows.

In essence, the link to the instant case and the Defendants is nonexistent in the Defendants' proffer. Absent such nexus, it cannot be said that the approach incident at the air show is material to the Defendants' intent to commit the charged crimes.

5. *Defendants Fail to Show that the Evidence Is of Such a Nature that a New Trial Would Probably Produce a New Result*

Defendants bear the burden of reasonably establishing that the introduction of the proffered evidence at a new trial would likely produce an acquittal. *United States v. Hirst*, 668 F.2d 1180, 1185 (11th Cir. 1982). The proffered evidence, of an unidentified Kuwaiti man and woman with no link to Defendants' approaching Real at an international air show, would not have changed the verdict in light of the evidence of Defendant Soghanalian's involvement in the charged crimes.

The evidence at trial showed a conspiracy between the Defendant Soghanalian, Mohammad, Perry and Ellis created in the 1983 conversation described by Ungerrecht at trial. The subsequent AMFAC and other meetings and the trip of Perry and Ellis to Iraq in March of 1983, the testimony of Ludwick of the Defendants' persistent efforts to lure Ludwick into a trip to Iraq during the negotiations for sale of the tow missiles to Kuwait; and the memos of Perry and Ellis after their trip to Iraq with Soghanalian all were evidence of the plan of the Defendants' to disguise the Iraq sale as one to Kuwait.

Furthermore, the evidence that there were no purchase orders, telexes, visits or communications from Kuwaiti officials during the time period alleged in the indictment, as described by Whelan and Taylor, compounded by the testimony by Ungerrecht that the destination of the helicopters was Iraq, and the testimony of Steiner and Weber of Hughes Aircraft nullifies Defendants' arguments that the proffered evidence would have produced an acquittal.

*Defendants are not Entitled to an Evidentiary Hearing*

 A district court is justified in dismissing the petition [for motion for new trial based on newly discovered evidence] on the basis of the pleadings, supplemented by the judge's own knowledge of the record, where the same judge presided at the trial and ample evidence supported the convictions. *Bentley v. United States*, 701 F.2d 897, 899 (11th Cir.1983).

The proffered evidence in this case bears little resemblance to the evidence deemed worthy of an evidentiary hearing in *United States v. Espinosa–Hernandez*, 918 F.2d 911 (11th Cir.1990). In *Espinosa*, the Eleventh Circuit reversed the district court's denial of a Motion for New Trial based on newly discovered evidence without holding an evidentiary hearing. This case is distinguishable from *Espinosa* for two reasons. First, Defendants have failed to satisfy the five elements necessary to justify a new trial on the basis of newly discovered evidence. Second, *Espinosa* involved serious allegations that the case agent, Dave Urso, in a drug conspiracy case, had committed serious misconduct involving the escape of an informant from Urso's custody. Specifically, Urso stood accused of lying to obtain his employment as a Customs Service agent and was under investigation for both his participation in the escape from federal custody of an incarcerated confidential government informant and his alleged distribution of cocaine. The Court held that the trial judge should have inquired as to the nature of the allegations of misconduct against Urso. In the present case, there simply is no evidence of such misconduct.

Defendants' further contend that the failure of the government to provide the Kuwaiti interest information proffered by Jack Real constitutes a violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Defendants' contention is misplaced and without merit.

 In order to establish a *Brady* violation, Defendants' must show: (1) the prosecution suppressed evidence (2) such evidence was favorable to the Defendants' or exculpatory; and (3) the evidence was ma-

terial. *United States v. Stewart,* 820 F.2d 370, 374 (11th Cir.1987); *United States v. McMahon,* 715 F.2d 498, 501 (11th Cir.1983) *cert. denied* 464 U.S. 1001, 104 S.Ct. 507, 78 L.Ed.2d 697 (1983).

The evidence of the Kuwaiti interest is not favorable or exculpatory. As previously discussed at length, the proffered evidence offers no evidence of a link or nexus to Defendant Sarkis Soghanalian. Again, the approach of an unidentified Kuwaiti man and woman at an international airshow expressing an interest in Hughes helicopters does not exculpate Defendants' with respect to the events alleged in the indictment and proved at trial.

Furthermore, as previously discussed, the Kuwaiti interest information and Perry's problems with Hughes Helicopter are not material to the intent of Sarkis Soghanalian to conspire with others to illegally export the helicopters without the required licensing under the guise of a false sale to Kuwait.

Moreover, the government has no obligation under *Brady* to provide Defendants with information which with reasonable diligence, Defendants could have discovered. As previously discussed, the Kuwaiti interest information was in the possession of Ellis since the event occurred and Defendants had ample opportunity to subpoena and interview Real at trial. Based on the foregoing, it is

ADJUDGED that Defendants' Motion for New Trial is DENIED without an evidentiary hearing.

DONE AND ORDERED.